IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EGAN JONES RATINGS COMPANY,<br>    Petitioner,<br><br>  v.<br><br>STEVEN PRUETTE and CHRISTOPHER PRUETTE on behalf of INSEARCH PARTNERS,<br><br>    Respondents. | CIVIL ACTION<br>NO. 16-mc-105 |

### MEMORANDUM OPINION

**Schmehl, J.**                      **October 30, 2017**

Before the Court is the Petition to Vacate Partial Final Arbitration Award of Egan Jones Ratings Company ("Egan"). Respondents, Steven Pruette and Christopher Pruette on behalf of InSearch Partners ("Pruette") have opposed the petition, and filed a Cross-Petition to Confirm Partial Arbitration Award. Having read the parties' briefing and held oral argument on this matter, I will deny Egan's petition to vacate the final partial arbitration award and I will grant Pruette's cross-petition to confirm.

### I.  BACKGROUND

Egan filed this proceeding under the Federal Arbitration Act , 9 U.S.C. § 1 *et. seq.* ("FAA") to vacate an arbitration award made in a proceeding held by the American Arbitration Association. The award in question is titled a "Partial Final Award of Arbitrator." (See Docket No. 1, Ex. H.) The Award addresses a contractual dispute between Egan, a Nationally Recognized Securities Rating Organization ("NRSRO") certified by the Securities and Exchange Commission, and Pruette, its exclusive distributor of ratings services.

Egan and Pruette entered into an exclusive distribution agreement on December 20, 1998 ("1998 Agreement"), providing that Pruette, through InSearch Partners, would solicit and accept orders for the securities rating service provided by Egan. (See Docket No. 1, Ex. C.) The 1998 Agreement provided for a two-year term, and for three separate one-year extensions if certain sales goals were met. Id. The Agreement further stated that "[e]ither party may end its association with the other with 90 day written notice after the end of the two year period…" Id. Meanwhile, at some point, Egan engaged another distributor, Peter Arnold, to market and sell services covered by the exclusivity provision of the 1998 Agreement.

Egan claims the 1998 Agreement was to expire in 2003, but was then extended until late 2004. Egan also claims that a new contract was entered into in late 2004 or 2005, and notice of cancellation of this revised agreement had been given to Pruette in 2006. Pruette contends that the 1998 Agreement was silent as to what would happen at the end of the term in 2003, Egan never terminated the Agreement, and it remained in force at least through 2014.

Pursuant to a stipulation of the parties, the arbitration was bifurcated into liability and damages phases. Accordingly, the arbitrator's decision in this matter was on liability only and did not address damages, and a separate arbitration hearing is to be held on damages. In short, the arbitrator found that the term of the 1998 Agreement was indefinite, pending receipt of notice of termination, that no new written agreement had been executed, and that no notice of termination had been given in 2006 or thereafter.

After the entry of the Partial Final Award, Egan petitioned this Court to vacate the arbitrator's award. (See Docket No. 1.) After a decision on Pruette's motion to dismiss,

Pruette filed its opposition to the petition and its own cross-petition seeking to confirm the arbitrator's award. For the reasons that follow, I will deny Egan's petition to vacate and grant Pruette's cross-petition to confirm the arbitrator's award, as I find that the arbitrator met all standards required for confirmation of an arbitration award.

## II. STANDARD OF REVIEW

The party moving to dismiss an arbitration award bears the burden of proof. Grosso v. Salomon Smith Barney, 2003 WL 22657305, *1 (E.D. Pa Oct. 24, 2003). An "extremely deferential standard of judicial review [is] set forth in the Federal Arbitration Act ("FAA"), 9 U.S.C.A. § 10(a)(1)-10(a)(4)." Dluhos v. Strasberg, 321 F.3d 365, 366 (3d Cir.2003). "[A] district court may vacate [an award] only under exceedingly narrow circumstances." Id. (citing 9 U.S.C. § 10); Amalgamated Meat Cutters & Butcher Workmen of N. Am., Local 195 v. Cross Brothers Meat Packers, Inc., 518 F.2d 1113, 1121 (3d Cir.1975). Pursuant to 9 U.S.C.A. § 10, a judge may vacate an arbitration award 1) where the award was procured by corruption, fraud, or undue means; 2) where there was evident partiality or corruption in the arbitrators... ; 3) where the arbitrators were guilty of misconduct and the rights of any party were thereby prejudiced; or 4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the matter before them was not made. 9 U.S.C. § 10(a)(2)-10(a)(4).

An arbitrator's decision may be vacated where the award evidences a "manifest disregard of the law." United Transp. Union Local 1589 v. Suburban Transit Corp., 51 F.3d 376, 379 (3d Cir.1995). My colleague, the Honorable Juan Sanchez, recently addressed the issue of manifest disregard in an arbitration proceeding and stated:

> A party seeking *vacatur* of an arbitration panel's award on the ground of manifest disregard of the law must demonstrate that the arbitrators "(1) knew of the relevant legal principle, (2) appreciated that this principle controlled the outcome of the disputed issue, and (3) nonetheless willfully flouted the governing law by refusing to apply it." Paul Green Sch. of Rock Music Franchising, LLC v. Smith, 389 Fed.Appx. 172, 176 (3d Cir. 2010). A court "may not reevaluate supposed inconsistencies in the arbitrator's logic or review the merits of the arbitrator's decision*.*" Local 863 Int'l Bhd. of Teamsters v. Jersey Coast Egg Producers, Inc., 773 F.2d 530, 533 (3d Cir. 1985). The "manifest disregard" doctrine "is to be used only [in] those exceedingly rare circumstances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the [vacatur] provisions of the [FAA] apply." Black Box Corp. v. Markham, 127 Fed.Appx. 22, 25 (3d Cir. 2005) (alterations in original)(internal quotation marks and citation omitted). VIWY "bears the burden of proving that the arbitrators were fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it." Id.

Ross Dress for Less, Inc. v. VIWY, L.P., 2017 WL 4155087, at *3 (E.D. Pa. Sept. 19, 2017).

It is not proper for the court to "reexamine the evidence" when reviewing an arbitration award. Mutual Fire, Marine, & Inland Ins. Co. v. Norad Reins. Co., Ltd.*,* 868 F.2d 52, 56 (3d Cir.1989). Errors in the arbitrators' factual findings or interpretations of the law do not justify a court's review or reversal on the merits. United Paperworkers Int'l Union v. Misco, Inc.*,* 484 U.S. 29, 36-38 (1987); Sun Ship, Inc. v. Matson Navigation Co.*,* 785 F.2d 59, 62 (3d Cir.1986) (citations omitted). A court may not overrule an arbitrator "simply because it disagrees" with the arbitrator's interpretation of the law. United Transp.*,* 51 F.3d at 379 (quoting News America Publications, Inc. v. Newark Typographical Union, Local 103*,* 918 F .2d 21, 24 (3d Cir.1990)). Even where the court is convinced that the arbitrator has committed serious error, the award must be enforced unless there is "absolutely no support at all in the record justifying the arbitrator's determinations." Id.

4

## III. DISCUSSION

Egan moves to vacate the arbitration award by arguing that the arbitrator manifestly disregarded the law by failing to rule on the threshold issue of the statute of limitations, by finding in that the 1998 Agreement was perpetual in nature, by expanding the scope of the arbitration clause beyond disputes arising under the 1998 Agreement and by failing to dismiss the proceeding initiated by an unincorporated association not registered to do business in Pennsylvania.[1] For the reasons set forth below, I find that none of the issues presented by Egan justify vacating the arbitration award in question.

### A. Statute of Limitations

Egan argues that the arbitrator's failure to rule on the statute of limitations defense is a manifest disregard of the law and against established law and public policy. Egan argues that any claims asserted under the 1998 Agreement are barred by Pennsylvania's four year limitations period for commencing a proceeding for breach of contract, as the original demand for arbitration was not filed until February 9, 2015.

In addressing the statute of limitations issue, the arbitrator stated in a footnote "I have limited my determination in this partial final award to whether EJR and/or Respondent Sean J. Egan breached the Agreement. . . I make no findings on whether the statute of limitations bars Claimants' claim in whole or in part." (Docket No. 1, Ex. H.) Egan's Petition to Vacate contains a footnote that references an article published by the arbitrator, in which he states that in his opinion, "actions and proceedings" to which the statute of limitations applies may not include arbitration proceedings. In fact, research

---

[1] At the argument in this matter, Pruette presented evidence that InSearch Partners had registered to do business in Pennsylvania in January of 2016. Accordingly, I will not address this argument as it is now moot.

shows that there is a split in authority as to whether a statute of limitations defense can be applied in an arbitration proceeding.

Only three states have passed laws that expressly apply the statute of limitations to arbitration proceedings, New York (N.Y. C.P.L.R. § 7502), Georgia (Ga. Code Ann. § 9-9-5 (2016)) and Washington (Wash Rev. Code § 7.04A.090(3)(2016)). The remaining states are inconsistent on the question of whether arbitration proceedings should be subject to a limitations period. The Florida Supreme Court held that the statute of limitations **does** apply to arbitration proceedings. Raymond James Financial Services, Inc. v. Phillips, 126 So.3d 186 (Fla. 2013). However, many other states have come to the opposite conclusion, finding that the statute of limitations does **not** apply to arbitration proceedings. See e.g., NCR Corp. v. CVS Liquor Control, Inc., 874 F.Supp. 168, 172 (S.D. Ohio 1993); Broom v. Morgan Stanley DW, Inc., 236 P.3d 182 (Wash. 2010); Manhattan Loft, LLC v. Mercury Liquors, Inc., 173 Cal. App. 4th 1040, 1051 (Cal. App. 2d Dist. 2009); Lewiston Firefighters Ass'n v. City of Lewiston, 354 A.2d 154, 167 (Me. 1976); Skidmore, Owings & Merrill v. Conn. Gen. Life Ins. Co., 197 A.2d 83 (Conn. 1963); Moore v. Ominicare, Inc., 118 P.3d 141, 153 (Idaho 2005); In re Cameron, 370 S.E.2d 704 (N.C. Ct. App. 1988).

After reviewing this split of authority, and failing to find caselaw directly on point in Pennsylvania, I find that the arbitrator's failing to reach the statute of limitations defense in his partial final award is not a manifest disregard of the law. "Manifest disregard for the law means more than mere legal error or misunderstanding. Rather, the decision must fly in the face of clearly established legal precedent." Silicon Power Corp., 661 F.Supp.2d at 542. As there is no consensus amongst the state or federal courts as to

whether a statute of limitations does in fact apply to arbitration proceedings, there is no clearly established legal precedent on this issue in Pennsylvania. Thus, there is no "egregious impropriety" on the part of the arbitrator, and I find that *vacatur* of the arbitration award on this ground would be improper.

**B. Interpretation of the 1998 Agreement**

Next, Egan argues that the arbitrator's finding that the 1998 Agreement was perpetual unless and until cancelled in writing was a manifest disregard of Pennsylvania law, public policy and was not supported by principles of contract construction.

The 1998 Agreement provides:

> The term of this Agreement is two years from the date hereof unless extended by mutual agreement. Either party may end its association with the other with 90 days written notice after the end of the two year period, provided, however, that if total revenues to EJR from sales made by IP, pursuant to this Agreement, exceed $300,000 during the last twelve month period of the initial term of this Agreement, then IP will have the option to extend the term for a one-year period. IP will have two additional options to renew the agreement for one additional year each if total revenues to EJR exceeds $450,000 during the third twelve month period and $600,000 during the fourth twelve month period after the date of this Agreement.

(Docket No. 1, Ex. C.)

On the issue of the 1998 Agreement, the Arbitrator stated:

> 3. After the end of the initial two-year period, the Agreement did not terminate until and unless either party provided the other with a "90 day written notice."
>
> 4. Although it had the right to do so earlier, . . . EJR did not provide the required ninety days written notice of termination, and thereby end the Agreement, until 2014.

(Docket No. 1, Ex. H.) With regard to this issue, Egan argues that the arbitrator found that the Agreement was perpetual and that contracts of perpetual duration are disfavored in Pennsylvania. In response, Pruette argues that the contract was

not perpetual, but was indefinite pending receipt of notice of termination. The arbitrator's decision was one of contractual interpretation: was the 1998 Agreement a contract with an automatic termination after five years, or was it a contract that would extend until after the notice of termination was provided?

The arbitrator accepted Pruette's interpretation of the contract and found that the contract continued until such time that a notice of termination was given. In order to prove manifest disregard for the law, Egan "bears the burden of proving that the arbitrator [was] fully aware of the existence of a clearly defined governing legal principle, but . . . ignored it." Black Box Corp., 27 Fed. Appx. at 25.

A review of the evidence shows that this finding by the arbitrator was not a manifest disregard of Pennsylvania law, nor did it violate Pennsylvania public policy. First, it was not a contract of indefinite duration. It contained a method for termination of the contract via a notice of termination. Therefore, it was merely a contract that would be extended until someone opted to terminate. The public policy considerations against a contract of indefinite duration do not apply here.

Second, the arbitrator's decision that the contract continued until notice of termination was given did not "fly in the face of clearly established legal precedent." Petitioner makes much of the parties' exchange of drafts of proposed revisions to the 1998 Agreement beginning in 2004, and a notice of termination was sent allegedly sent by Petitioner in 2006. However, a dispute exists as to what effect these revisions had and whether a notice of termination was actually sent. The arbitrator found that the 1998 Agreement did not have a fixed term and had

never been effectively terminated. He also ruled that there was no replacement agreement entered into and there was no credible evidence of the tender of a notice of termination. These decisions were made in part based upon disputed testimony, and the arbitrator properly heard testimony and made credibility determinations in accordance with the weight of the evidence. This is not manifest disregard for the law. This is a proper weighing of conflicting evidence. Accordingly, there is no ground to vacate the decision of the arbitrator.

### C. Arbitrator Did Not Exceed His Authority

Lastly, Egan argues that the arbitrator exceeded his authority by exercising jurisdiction over claims not arising from the 1998 Agreement. Specifically, Egan claims the arbitrator "exercise[ed] jurisdiction over alleged breaches of duties not arising from the Agreement and the Award must be vacated." However, a review of the Partial Final Award in this matter shows that this contention is clearly erroneous. The arbitrator stated: "I have limited my determination in this partial final award as to whether [Egan] breached the Agreement. I make no findings in this partial final award on Claimants' alternative equitable claims, including quasi-contract and unjust enrichment." Therefore, the arbitrator clearly did not consider any claims not arising from the Agreement and did not exceed his authority in any way.

### IV. CONCLUSION

Therefore, for the reasons set forth more fully above, I find that the Partial Final Award of the arbitration in this matter is confirmed and the stay shall be lifted to permit the damages phase of the arbitration to commence.